**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JOHN R. S.,[1]                                          )
                                                        )
                    Plaintiff,                          )
                                                        )         CIVIL ACTION
v.                                                      )
                                                        )         No. 22-2528-JWL
MARTIN J. O'MALLEY,[2]                                  )
Commissioner of Social Security,                        )
                                                        )
                    Defendant.                          )
_____ )

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i)

and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).

Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS

that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

AFFIRMING the Commissioner's final decision.

**I.      Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the
interest of protecting the privacy interests of Social Security disability claimants, it has
determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On December 20, 2023, Mr. O'Malley was sworn as Commissioner of Social Security.
In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley
is substituted for Acting Commissioner Kilolo Kijakazi as the defendant.  Pursuant to the
last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSDI benefits on July 21, 2020.  (R. 14).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in finding his condition does not meet or medically equal Listing 11.14A or B for Peripheral Neuropathy and erred in assessing a residual functional capacity (RFC) permitting substantial gainful activity.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  At step four of the process, the ALJ determined Plaintiff is capable of performing his past relevant work as a customer service representative and, therefore did not evaluate step five.  The court finds it necessary as a preliminary matter to address three issues Plaintiff asserts with respect to the legal standard applicable in a court's review of a Social Security disability case.

## II.    Proper Application of the Court's Standard of Review

### A.    The Specific Standard of Review

In his Brief Plaintiff acknowledges the court must review the decision of the Commissioner and that "to override an agency's factual finding, a reviewing court 'must

find that the evidence not only supports [a contrary] conclusion, but compels it.'" (Pl. Br.

8) (quoting Elias-Zacarias, 502 U.S. at 481 n.1). He argues,

> The evidence of the record here compels such a conclusion. The ALJ's
> selective use of vague references in the record, inappropriate medical
> judgment, minimization of Plaintiff's subjective reports of pain and
> impairment, and disregard of medical evidence constitute reversible error
> sufficient for remand of the case.
>
> The evidence of the record supports a different finding than that of the ALJ.
> Plaintiff does not suggest that this Court [sic] reweigh facts or substitute the
> ALJ's decision with its own opinion or the opinion of the Plaintiff.
> Plaintiff does however, suggest that the opinion of the ALJ is not supported
> by substantial evidence and therefore the ALJ's decision should be reversed
> and remanded.

(Pl. Br. 8-9).

> In his Reply Brief, Plaintiff argues that in her Brief the Commissioner

incompletely articulates the standard of review and the extent of the inquiry
of the District Court. This Court [sic] must analyze the decision of the
ALJ. This Court [sic] must instead find that "no reasonable factfinder,
following the correct analysis, could have reached a different conclusion
than the ALJ in this case."

(Reply 2) (quoting Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004); and citing

without pinpoint citation Hendron v. Colvin, 767 F.3d 951 (10th Cir. 2014)). He

continues, arguing the Commissioner

> inappropriately relies on an overbroad interpretation of Biestek v. Berryhill
> [, 139 S. Ct. 1148, 1153, 1154, 1157 (2019)], arguing throughout the brief
> that because the ALJ presents any evidence, or presents any theory of the
> case based on evidence, such conclusions must be upheld by the higher
> courts if they are supported by a "mere scintilla" of evidence. (Commr's
> Brief at 3); See also, Dye v. Barnhart, 180 F. App'x. 27 (10th Cir. 2006).
> Further, the Commissioner argues that this Court [sic] must limit its review
> of the ALJ's interpretation of the facts of this case, based solely on the fact
> that this Court [sic] may neither reweigh the evidence nor substitute its

judgment to match the ALJ interpretation. (Commr's Br. at 5; citing Hendron) (citation omitted).

(Reply 2-3).

Plaintiff does not point to a specific finding or findings of the ALJ for which the evidence compels a different finding.  If he is arguing the evidence compels a finding contrary to the ALJ's finding non-disability, that finding is the ALJ's conclusion based on many individual findings earlier in his decision and it is necessary for Plaintiff to identify the specific finding or findings of error for which the evidence compels a different finding.  Otherwise, the court could only conclude that Plaintiff is asking the court to reweigh the evidence and determine for itself if Plaintiff is disabled.  That is not the court's place.  Rather, the court's duty is to review the ALJ's decision, to determine if the correct legal standard was applied and to determine if such relevant evidence as a reasonable mind might accept as adequate to support a conclusion supports the ALJ's findings.  If those questions are answered yes, the court must affirm the ALJ's decision even if the court believes Plaintiff is disabled or even if the preponderance of the evidence supports a finding of disability.  E.g. Perales, 402 U.S. at 401; Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172; Bowling, 36 F.3d at 434.

Contrary to Plaintiff's assertion, the court in reviewing the findings need not "find that 'no reasonable factfinder, following the correct analysis, could have reached a different conclusion than the ALJ in this case.'"  (Reply 2) (quoting Allen, 357 F.3d at 1145).  That consideration is reserved to cases in which the court finds that the ALJ made

an error but that the error was harmless.  The <u>Allen</u> court noted two considerations

counsel a skeptical reception of harmless error analysis in Social Security cases.

> First, if too liberally embraced, it could obscure the important institutional
> boundary preserved by <u>Drapeau's</u> [<u>v. Massanari</u> 255 F.3d 1211, 1214 (10th
> Cir. 2001)] admonition that courts avoid usurping the administrative
> tribunal's responsibility to find the facts.  Second, to the extent a harmless-
> error determination rests on legal or evidentiary matters not considered by
> the ALJ, it risks violating the general rule against post hoc justification of
> administrative action recognized in <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 63
> S. Ct. 454, 87 L. Ed. 626 (1943) and its progeny.  With these caveats, it
> nevertheless may be appropriate to supply a missing dispositive finding
> under the rubric of harmless error in the right exceptional circumstance, i.e.,
> where, based on material the ALJ did at least consider (just not properly),
> we could confidently say that no reasonable administrative factfinder,
> following the correct analysis, could have resolved the factual matter in any
> other way.

<u>Allen</u>, 357 F.3d at 1145.

Other than in harmless error analysis, it is irrelevant that two fact-finders might

reach inconsistent conclusions from the same factual record.  "The possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative

agency's findings from being supported by substantial evidence.  We may not displace

the agency's choice between two fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been before it de novo."  <u>Lax</u>, 489

F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed.</u>

<u>Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).

Plaintiff's allegation that the Commissioner argues the ALJ's findings must be

accepted by this court "if they are supported by a 'mere scintilla' of evidence" (Reply 3,

purporting to quote Comm'r Br. 3 and citing <u>Dye</u>, 180 F. App'x  27) misunderstands the

Commissioner's argument and the legal standard.  In her citation of the standard of
review in a Social Security case, the Commissioner quotes the Social Security Act, "[t]he
findings of the Commissioner of Social Security as to any fact, if supported by substantial
evidence, shall be conclusive."  (Comm'r Br. 3) (citing 42 U.S.C. § 405(g) (sentence 5)).
She explains, "Substantial evidence is, simply, '_more_ than a mere scintilla' of evidence."
(Comm'r Br. 4) (quoting Biestek, 139 S. Ct. at 1154) (emphasis added by the court).  She
continues, quoting Biestek, "It means – and means only – such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."  Id.  (quoting
Biestek, 139 S. Ct. at 1154).  The Commissioner is correct in her citation of the legal
standard the court must apply, and as she correctly noted substantial evidence is _more_
than a mere scintilla of evidence, and consequently the ALJ's factual findings are
conclusive if supported by _more than_ a scintilla of evidence (substantial evidence).

Dye does not require a different result.  The court in Dye found error because the
ALJ failed at step three to explain why Ms. Dye's condition did not meet or equal a
listing for heart impairment.   180 F. App'x at 29.  The Commissioner argued the error
was harmless but the court found otherwise because it could not find that the evidence
demonstrated no reasonable fact-finder could conclude otherwise.  Id. at 29-30.  Here, the
Commissioner does not argue harmless error, and if the court finds an error it will apply
the harmless error standard applied in Allen and Dye.

**B.     Post Hoc Rationalization**

In his Reply Brief Plaintiff argues numerous times that the Commissioner has used impermissible post hoc rationalization to justify the ALJ's findings.  (Reply 5, 6, 7, 13, 16).  Plaintiff explains his position:

> The Commissioner cannot substitute a post hoc rationalization to support the ALJ's finding.  The Commissioner cannot support the findings of the ALJ with post hoc explanations.  See, Christopher v. SmithKline Beecham Corp., 567 U.S. 142 (2012) (Court refused to follow agency interpretation because it cannot conclude that the interpretation advanced reflects the "fair and considered judgment" of the Commissioner; instead, it reads more like a litigating position or "a post hoc rationalization."); Haga[ v. Astrue], 482 F.3d [1205,] 1207 (10th Cir. 2007) (This court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.); Allen v. Barnhart, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's "post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process").

(Reply 16).

Plaintiff is correct in arguing that an ALJ's decision should be evaluated based solely upon the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  Nor may a reviewing court create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action.  Allen, 357 F.3d at 1145.  But, although a reviewing court "may not supply a reasoned basis for the agency's

action that the agency itself has not given," it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quoting, respectively, SEC v. Chenery Corp., 332 U.S. 194, 196 (1947); and Bowman Transp. Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)).

However, an ALJ is not required to discuss every piece of evidence. The record must demonstrate that the ALJ considered all the evidence, but in addition to discussing evidence supporting his decision, the ALJ must discuss only the uncontroverted evidence he chooses not to rely upon, and significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, Social Security Ruling (SSR) 96-8p, provides that the decision must include a narrative discussion describing how the evidence supports each conclusion in the ALJ's RFC assessment. West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2023). Moreover, the question before the court on judicial review of a decision by the Commissioner is two-fold: whether the Commissioner applied the correct legal standard, and whether substantial evidence in the record supports the decision. E.g., Wilson, 602 F.3d at 1140; Raymond v. Astrue, 621 F.3d 1269, 1271 (10th Cir. 2009); Poppa v. Astrue, 569 F.3d 1167, 1169 (10th Cir. 2009); Wall, 561 F.3d at 1072; Cowan v. Astrue, 552 F.3d 1182, 1184-85 (10th Cir. 2008); Bowman, 511 F.3d at, 1272; Lax, 489 F.3d at 1084.

It is a practical impossibility for an ALJ's decision to discuss, summarize, or even cite all of the evidence in a record consisting of over one thousand pages, such as that presented in this case. Therefore, the decision must demonstrate that the ALJ considered

all the evidence, but the ALJ is not required to cite <u>all</u> the evidence supporting each of his findings.  <u>Castillo v. Astrue</u>, Civ. A. No. 10-1052-JWL, 2011 WL 13627 at *10-11 (D. Kan. Jan. 4, 2011).  Moreover, as the court recognized in <u>Allen</u>, it would be improper for a reviewing court to consider evidentiary matters which were <u>not considered</u> by the ALJ. However, a reviewing court may consider evidence which was actually considered by the ALJ even if that evidence was not cited in the decision.  <u>Thongleuth v. Astrue</u>, Civ. A. No. 10-1101-JWL, 2011 WL 1303374 at *6 (D. Kan. April 4, 2011).  Nevertheless, as Plaintiff suggests, a reviewing court may not create post-hoc justifications or rely upon appellate counsel's post-hoc rationalizations to affirm the ALJ's decision.  The Commissioner's decision may be affirmed only "on the same basis articulated in the order by the agency itself."  <u>Burlington Truck Lines, Inc. v. United States</u>, 371 U.S. 156, 169 (1962) (citing <u>SEC v.  Chenery Corp.</u>, 332 U.S. 194, 196 (947)).  However, neither <u>Burlington Truck Lines</u>, <u>Chenery Corp.</u>, nor the other cases cited by Plaintiff suggest that an agency's decision must be supported on review only by evidence <u>cited</u> in the agency decision.  Rather, they require that the decision be evaluated based upon the rationale, bases, grounds, explanations, or reasons relied upon by the agency.  <u>Burlington Truck Lines</u>, 371 U.S. at 169 ("on the same basis articulated in the order by the agency"); <u>Chenery Corp.</u>, 332 U.S. at 196 ("solely by the grounds invoked by the agency"); <u>Haga</u>, 482 F.3d at 1207 ("ALJ did not provide these explanations"); <u>Robinson</u>, 366 F.3d at 1084 ("decision should have been evaluated based solely on the reasons stated in the decision"); <u>Allen</u>, 357 F.3d at 1142 (court relied "upon certain analytical revisions offered on judicial review," and the "ALJ's decision cannot stand on its own erroneous

rationale"); Ramirez v. Barnhart, Civ. A. No. 02-2261-KHV, 2003 WL 21105082, *6 (D. Kan. April 4, 2003) (citing Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) ("decision must stand or fall with reasons set forth in decision")).  Therefore, in evaluating the ALJ's decision, the court must first determine the ALJ's rationale, bases, grounds, explanations, or reasons for the finding at issue, and then determine whether substantial record evidence supports that finding and the rationale relied upon.  If the Commissioner points to record evidence which was considered by the ALJ and which supports the ALJ's rationale, the court will consider that evidence.  Nevertheless, if the Commissioner points to record evidence (even evidence which was considered by the ALJ) and attempts to provide an alternative rationale in support of the ALJ's finding, the alternative rationale is merely post-hoc rationalization which may not be relied upon by the court to affirm the decision.  The court will first determine the rationale relied upon by the ALJ in reaching his decision and will then consider whether substantial evidence in the record supports the decision.  In making that determination, the court will consider all record evidence which was considered by the ALJ.  The mere fact that the Commissioner or the court cites evidence in support of the ALJ's rationale for his decision which was not cited by the ALJ does not constitute post hoc rationalization.

Plaintiff appears to equate post hoc explanation with post hoc rationalization.  Any explanation in judicial review of a Social Security disability decision, including Plaintiff's explanation of the errors alleged in the decision, is necessarily a post hoc explanation.  Such explanation is only impermissible if it is an alternative rationale to that

of the Commissioner's final decision.  Offering further record evidence in support of the

ALJ's reasoning is not impermissible post hoc rationalization.

### C.     Least Reliable Evidence

Finally, in his Brief, Plaintiff argues, "The ALJ invariably relies on limited

evidence, such as 'mental status exams,' simple recitations of symptoms collected during

regular appointments without clear indicia of reliability, while ignoring narrative

discussions of symptoms."  (Pl. Br. 22).  Later, he argues,

> The ALJ clearly is misinterpreting or misrepresenting the evidence of the
> record, as such evidence that the ALJ uses is not substantial evidence
> sufficient to support his conclusion.  White, 287 F.3d at. 905.  An "ALJ
> may not pick and choose which aspects of an uncontradicted medical
> opinion to believe, relying on only those parts favorable to a finding of
> nondisability."  Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir. 2004).
> Nor may an ALJ substitute his own medical opinion for that of a claimant's
> treating doctors.  (Id. at 1221.)

Id. at 23.  In his Reply Brief Plaintiff more directly explains his view the evidence relied

upon by the ALJ is not as reliable as other evidence in the record which should have been

relied upon.

> The ALJ's error is his misuse of minimally probative evidence to find that
> Plaintiff is not disabled.  As is further articulated in Plaintiff's initial brief,
> the ALJ consistently relies on the least reliable evidence in medical records,
> such as the obligatory physical exams that accompany medical notes.
> These are not substantial evidence when they are contradicted by the
> doctor's own narratives and other findings in the record.  Medical notes are
> generally filled with redundancies; for completeness, the protection of
> patients, and to provide for wrap-around care to identify imminently deadly
> symptoms that may go unnoticed.  The physical exams attached to most
> medical records lack detailed explanations and contain no information
> about whether or how any of the symptoms listed there were tested.  For an
> example, it is unreasonable to think that two hypothetical general physical
> exams, one stating "patient moves all extremities," and the other stating
> "straight leg testing was positive on the right, negative on the left," record

13

the same acts of testing.  Another example, often pointed to by the ALJ in this case, is "alertness" level, where a record indicates that "patient was alert/oriented x 3" or some version of that observation.  This is not a persuasive indicator of mental health.  A person identified as "not alert" is likely unconscious, and whether a person knows who they are, where they are, and for what purpose, while important, is not a material indicator of a person's ability [to] function in a work setting with an impairment like depression or anxiety.  Arguments like those put forth by the Commissioner dismissing Plaintiff's objective and subjective evidence of pain by saying Plaintiff is "ambulatory" when he sought treatment of an eye injury does not bear any indicia of reliability that should be expected of medical evidence either for or against a finding of disability.  (Comm'rs Brief at 9, citing Tr. 821, 823).

Here, the ALJ is using insubstantial evidence to support both that the evidence provided by the Plaintiff does not support disability, and that the evidence shows that Plaintiff retains the residual functional capacity to do work. The ALJ's argument fails on both counts. The Court should find that either no subsequent factfinder would accept the conclusions of the ALJ or that the evidence put forward by the ALJ is overwhelmed by other evidence of the record. The Commissioner's claim, based primarily on reiterating the claims of the ALJ, fails to provide any persuasive support to the ALJ's claim and is instead either post hoc rationalizations for the ALJ's shortcomings, or superficial arguments ignoring reasonable interpretation.

(Reply 4-5).

The court notes that in this argument Plaintiff provides an apparent explanation of what he considers better (reliable, acceptable, appropriate, strong) evidence, but he provides no citation to legal or medical authority that in judicial review of a Social Security disability decision such evidence is more compelling or should be credited over mental or physical examination findings or over other evidence Plaintiff finds insubstantial.  The question for the court is not the reliability of the evidence or the best evidence compared to some other evidence.  The question for the court is whether the

evidence supporting the ALJ's decision is substantial evidence ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

What Plaintiff appears to be arguing for is a preponderance of the evidence standard. Such a standard is the second order of proof above substantial evidence—clearly erroneous—preponderance. Moreover, applying that standard would require the court to reweigh the evidence in comparison to the weight afforded by the ALJ. Neither applying a preponderance of the evidence standard nor reweighing the evidence is a choice permitted to the court in judicial review of a Social Security decision. E.g., Lax, 489 F.3d at 1084; Bowman, 511 F.3d at 1272.

Because of Plaintiff's significant misunderstanding and misapplication of the legal standard required in judicial review of a decision of the Commissioner of Social Security, the court finds his arguments largely unhelpful. However, the court will address the errors alleged in Plaintiff's Brief—error in evaluating both Listing 11.14A and Listing 11.14B, Peripheral Neuropathy, and error in assessing Plaintiff's RFC and allegations of disabling symptoms.

## III. Listing 11.14, Peripheral Neuropathy

Plaintiff argues the ALJ erred in finding his condition does not meet or equal Listing 11.14A because the evidence shows he has disorganization of motor function in at least two extremities—his bilateral knees (both lower extremities) and his left arm (left upper extremity). (Pl. Br. 10). He argues the evidence shows the disorganization of motor function causes an extreme limitation in the use of his upper extremities and an

extreme limitation in balance while walking.  Id.  Plaintiff cites record evidence which in his view demonstrates the criteria of the Listing are met or equaled.  Id. at 10-12.

Plaintiff also argues the ALJ erred in finding his condition does not meet or equal Listing 11.14B because he "has a marked limitation in physical functioning based on his continued pain and inability to use his hands for an extended period of time, as well as his inability to walk for extended periods of time."  Id. 12.  Plaintiff cites record evidence and argues the ALJ should have found a marked limitation in physical functioning.  Id. 12-13.

Plaintiff acknowledges the ALJ found he has mild limitations in the three broad mental functional areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace, and no limitations in the area of adapting or managing oneself.  Id. 13.  He then argues,

> Here, the Court [sic] should find that the factual findings of the ALJ are not based on substantial evidence, as such, they cannot be considered "conclusive."  Noreja v. Comm'r SSA, 95[2] F.3d 1172 (10th Cir. 2020). The ALJ inappropriately relies on limited subjective information and ignores the findings of medical sources in the record.  The ALJ's findings are instead, lacking source material, based on the ALJ's own lay interpretation of Plaintiff's abilities, again relying on limited non-specific information about Plaintiff's suggested ability to hunt and fish. (Id.).
>
> The ALJ should have found that Plaintiff had a marked limitation in one of the four broad categories of mental functioning.

(Pl. Br. 13).

Plaintiff provides specific argument that the ALJ erred in his evaluation of the areas of understanding, remembering, or applying information, id. 14-16; and interacting with others.  Id. 16-17.  Plaintiff concludes his argument by asserting that the ALJ's

16

decision is relying "on inference, instead of evidence, to support his determination that

Plaintiff is not disabled," id. at 17, and overgeneralizes the medical evidence regarding

Plaintiff's mental impairments. Id. 18 (quoting without pinpoint citation Scott v. Astrue,

647 F.3d 734 (7th Cir. 2011)). He concludes,

> The ALJ should have found that Plaintiff's impairments [meet] the
> [criteria] of listing 11.14B, finding that Plaintiff [has marked physical]
> limitations in his upper extremities, and marked limitations in
> understanding, remembering, and applying information, and interacting
> with others.
>
> The evidence in the record compels a finding that non-exertional limitations
> caused by Plaintiff's mental impairment meets [sic] or equals [sic] a listing
> and the ALJ failed to examine or properly weigh the evidence of record as a
> whole. Both through the record presented, and by Plaintiff's testimony,
> Plaintiff has shown on a criteria-by-criteria [sic] basis that his impairment
> medically meets or equals a listing, and therefore, the Commissioner is not
> entitled to prevail as a matter of law.

(Pl. Br. 19. (citing Duncan v. Colvin, 608 F. App'x 566, 576 (10th Cir. Apr. 2, 2015)).

The Commissioner argues Plaintiff fails to demonstrate his condition meets or

medically equals the criteria of Listing 11.14. (Comm'r Br. 4). She argues the only

evidence relating to Listing 11.14A "concerns Plaintiff's grip strength, but those findings

fail to show the severity required" because he "fails to show an inability to grip, grasp, or

pinch for the required 12-month period." (Comm'r Br. 6). She also argues, "Plaintiff

fails to explain how the[] findings [in the record evidence] demonstrate that he could not

stand from a seated position or balance while standing and walking as required by the

listing." Id. 7.

Respecting Listing 11.14B, the Commissioner argues that the evidence relied upon

by Plaintiff does not demonstrate a marked limitation in physical functioning. Id. 8-10.

As to marked limitations in mental functioning, the Commissioner argues the ALJ

correctly evaluated the four broad mental functional areas in his step two analysis and

Plaintiff's arguments do not compel greater limitations in any area.  Id. 10-18

### A.      Standard for Evaluating Step Three

The Commissioner has provided a "Listing of Impairments" which describes

certain impairments that she considers disabling.  20 C.F.R. § 404.1525(a); see also, Pt.

404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals

the severity of a listed impairment, that impairment is conclusively presumed disabling.

Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if

claimant's impairment "meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled").  However, the claimant "has the burden at step

three of demonstrating, through medical evidence, that his impairments 'meet all of the

specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-

7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493

U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some

of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the

listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed

impairments at a higher level of severity than the statutory standard.  The listings define

impairments that would prevent an adult, regardless of his age, education, or work

experience, from performing any gainful activity, not just 'substantial gainful activity.'"

Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).

The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  <u>Yuckert</u>, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."  <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

<u>Medical equivalence</u> to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).  The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience. 20 C.F.R. § 404.1526(c).

As quoted, in part by Plaintiff, Listing 11.14 is the Listing at issue here:

11.14 Peripheral neuropathy, characterized by A or B:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
>> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>>
>> 2. Interacting with others (see 11.00G3b(ii)); or
>>
>> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>>
>> 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.14.

**B.      The ALJ's Findings Relevant to this Issue**

The ALJ found that Plaintiff has severe impairments of "degenerative disc disease

of the lumbar spine, degenerative joint disease of the bilateral knees, ulnar neuropathy,

bilateral carpal tunnel syndrome, right rotator cuff impingement syndrome, hearing loss,

and obesity."  (R. 17) (finding no. 5, bolding omitted).  The ALJ found that Plaintiff had

a number of other medically determinable physical impairments not currently producing

significant symptoms and that he had "considered all the claimant's medically

determinable impairments, including those that are not severe, when assessing

[Plaintiff's] residual functional capacity."  Id. 18.

The ALJ also found Plaintiff has "medically determinable mental impairments of

depression and a generalized anxiety disorder," considered their affect on Plaintiff's

functioning in the four broad mental functional areas, and found the impairments are not

severe.  Id.  He concluded:

> Because the claimant's medically determinable mental impairments cause
> no more than "mild" limitation in any of the functional areas and the
> evidence does not otherwise indicate that there is more than a minimal
> limitation in the claimant's ability to do basic work activities, they are
> nonsevere (20 CFR 404.1520a(d)(1)).

(R. 18-19).

In his step three discussion the ALJ found, "The record does not establish the

medical signs, symptoms, laboratory findings or degree of functional limitation required

to meet or equal the criteria of" any Listed Impairment and specifically noted Listing

11.14 to be a Listing he considered.  He went on to find "the record does not support that

the claimant has a disorganization of motor function in two extremities or a marked

20

limitation in physical functioning to satisfy the requirements of listing 11.14." (R. 20) (citing Ex. B1F/337, 348, 358, 363-68). And, "no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal a listed impairment." Id.

### C.    Analysis

Because the ALJ found Plaintiff's condition does not satisfy the criteria of Listing 11.14, the question before the court is whether the record contains such relevant evidence as a reasonable mind might accept as adequate to support a conclusion which supports that finding. The court finds it does. Listing 11.14A requires disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, to balance while standing or walking, or to use the upper extremities. The regulations define an extreme limitation as "the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities." 20 C.F.R., Pt. 404, Subpt. P., § 11.00D2 (emphasis added). It further defines the inability to perform each of these activities:

a.  Inability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes.

b.  Inability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes.

    c.  Inability to use your upper extremities means that you have a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements. Inability to perform fine and gross motor movements could include not being able to pinch, manipulate, and use your fingers; or not being able to use your hands, arms, and shoulders to perform gross motor movements, such as handling, gripping, grasping, holding, turning, and reaching; or not being able to engage in exertional movements such a lifting, carrying, pushing, and pulling.

Id. § 11.00D2.  It is clear the Listing's use of the term "disorganization of motor function" means the complete inability to perform any one of the three activities at issue.

Plaintiff has not shown the inability to stand up from a seated position or the inability to maintain balance while standing or walking because he has not shown that he needs the assistance of another person or an assistive device, such as a walker, two crutches, or two canes.  Although Plaintiff suggests he meets or equals these criteria because he must use a cane, he has not demonstrated that he needs the use of two canes and he does not point to any additional limitation which is at least equal in severity and duration to that criterion.

Even assuming without deciding that Plaintiff may demonstrate the loss of function described in § 11.00D2c as to only one upper extremity rather than both, he has not shown the inability to pinch, manipulate, and use his fingers; or to handle, grip, grasp, hold, turn, and reach; or to lift, carry, push, and pull with either upper extremity.  Plaintiff argues medical evidence shows "that his impairment interferes with his use of his fingers, arms, and shoulders."  (Pl. Br. 10).  The ALJ acknowledged Plaintiff was limited in the use of his fingers, arms, and shoulders, and limited him to lift, carry, push, and pull only

20 pounds occasionally (from verry little up to one-third of a workday) and only 10

pounds frequently (from one-third up to two thirds of a workday).  (R. 20) see also SSR

83-10, 1983 WL 31251 at *5-6, (SSA 1983) (defining "Occasionally" and "Frequent").

He also limited Plaintiff to frequent fingering, and to occasional reaching in all directions

with his right arm.  Id.  The ALJ explained:

> In consideration of the claimant's degenerative disc disease of the lumbar
> spine, degenerative joint disease of the bilateral knees, ulnar neuropathy,
> bilateral carpal tunnel syndrome, and a right rotator cuff impingement
> syndrome, the undersigned limits the claimant to sedentary work with
> lifting and carrying ten pounds frequently and twenty pounds occasionally;
> standing or walking for 4 hours in an 8-hour workday; sitting for 6 hours in
> an 8-hour workday; pushing or pulling in the limits for lifting and carrying;
> occasional use of ramps and stairs; no climbing of ladders, ropes or
> scaffolds; frequent balancing, stooping, kneeling, crouching and crawling;
> frequent fingering; occasional reaching in all directions with the right upper
> extremity; avoidance of concentrated exposure to temperature extremes,
> and hazards; and no work around vibration.  The medical record is not
> supportive of any additional restrictions.

(R. 22-23).  While Plaintiff argues error in the ALJ's RFC assessment, the court finds no

error as will be explained hereinafter.

Listing 11.14B requires a marked limitation in physical functioning and a marked

limitation in one of the four broad areas of mental functioning.  The ALJ found in his step

three evaluation that the record does not support "a marked limitation in physical

function" and does not meet the criteria of Listing 11.14B.  (R. 20).  However, he found

earlier in his step two evaluation that Plaintiff does not have a marked limitation in any of

the broad areas of mental functioning.  Id. 18-19.  In fact, he found that Plaintiff has a

mild limitation in each of the first three broad areas of mental functioning—

Understanding, remembering, or applying information; interacting with others; and

concentrating, persisting, or maintaining pace—and no limitation in the ability to adapt or manage oneself.  (R. 18-19).  The court finds Plaintiff has not shown a marked limitation in any of the broad areas of mental functioning.  Therefore, Plaintiff cannot demonstrate he meets or medically equals the criteria of Listing 11.14B and the court need not consider whether Plaintiff's condition meets or medically equals a marked limitation in physical functioning.  A "marked" limitation in mental functioning is defined as a degree of limitation which "seriously limits your ability to function independently, appropriately, and effectively on a sustained basis, and complete work-related mental activities."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.00G2b.

Plaintiff claims, "The ALJ should have found that Plaintiff had a marked limitation in one of the four broad categories of mental functioning" (Pl. Br. 13) but he only provides argument supporting the area of understanding, remembering, or applying information; id. at 14-16; and the area of interacting with others.  Id. 16-17.  The ALJ explained his evaluation of both areas, beginning with understanding, remembering, or applying information.

> In understanding, remembering, or applying information, the claimant has mild limitations.  The claimant alleges that he has difficulty remembering generally, following instructions, completing tasks, and taking medications without reminders. (Ex. B5E/1-7; B9E.)  However, the claimant also stated that he can prepare simple meals, manage his own money, go to doctor's appointments, shop, and drive. (Ex. B5E/1-7; B9E.)  In addition, the record makes no mention of any issues with the claimant's short or long-term memory or cognitive functioning and during the period at issue the claimant was able to manage his late wife's estate, sell her home, and purchase a new home. (Ex. B2F/12; B4F; B5F/34-36; B6F/176-79; B11F/5-12.)  Although the claimant demonstrates some limitation in understanding, remembering, or applying information, the degree of limitation is no more than mild.

In interacting with others, the claimant has mild limitations. Here, the claimant alleges that he has difficulty engaging in social activities, getting along with others, and spending time in crowds. (B5E/1-7; B9E; Hearing Testimony.) The claimant testified that he avoids people because he has limited patience and a low tolerance for noise and crowds. (Hearing Testimony.) However, according to his statements, the claimant is able to shop, spend time with friends and family, and lives with his girlfriend. (Ex. B5E/1-7; B9E; Hearing Testimony.) Additionally, during the period at issue, the claimant reported an ability to travel out of state by plane on several occasions to attend social functions without difficulty, as well as go hunting with a friend. (Ex. B6F/117-18, 131-33, 136-38, 176-79; B8F/50; B11F/5-12, 17, 19-20.) Finally, the medical evidence shows that the claimant has a good rapport with various medical providers and has good interactions with non-medical staff. (Ex. B1F/33, 345-46; B4F/3; B5F/10; B6F/25, 80; B11F/11.) Although the claimant demonstrates some limitation in interacting with others, the degree of limitation is no more than mild.

(R. 18).

The court's review of the evidence upon which the ALJ relied in evaluating this mental functional area reveals it supports his evaluation. Plaintiff's argument the ALJ relies on inference, instead of evidence, is confusing at best and misunderstands the ALJ's role as the factfinder. The objective medical evidence in a Social Security disability case will never state a particular mental area of functioning is mildly, moderately, markedly, extremely, or not limited. Therefore, the ALJ in his duty as factfinder, must necessarily infer from the evidence his findings respecting the claimant's limitations.

Moreover, if the evidence contains a statement respecting the claimant's limitations in a particular area of mental functioning that statement will constitute opinion evidence and must be evaluated in accordance with 20 C.F.R. §§ 404.1513 and 404.1520c. That is precisely what occurred in this case. The state agency psychological

consultants, Dr. Leaf and Dr. Duclos, each provided opinions respecting Plaintiff's limitations in the four broad mental functional areas (R. 102-03, 123) and the ALJ evaluated those opinions. Id. at 24-26. Dr. Leaf opined Plaintiff had a mild limitation in understanding, remembering, and applying information and no limitation in interacting with others, id. at 102-03, whereas Dr. Duclos opined Plaintiff had a mild limitation in the former and a moderate limitation in the latter. Id. 123. The ALJ found Dr. Leaf's opinion persuasive

> because it is supported and consistent with the record as a whole. Specifically, the record indicates that despite his depression and anxiety, the claimant is able to perform a wide range of activities of daily living including preparing meals, performing household chores, shopping, driving, traveling and vacationing out of state, living with others, and hunting and fishing. Moreover, mental status examinations note that the claimant demonstrates fair to good hygiene, good eye contact, normal speech, normal thought processes, and normal though[t] content.

(R. 24-25) (citations omitted). On the other hand, he found Dr. Duclos's opinion

> unpersuasive because it is not supported and consistent with the record. Specifically, Dr. Duclos opined that a moderate limitation in the area of interacting with others was supported by the claimant's difficulties in his last job and evidence of decompensation under stress, as well as the nature of his mental impairments. In contrast, the undersigned notes that during the period at issue, the claimant began a relationship with a woman, and they are presently living together. Moreover, the claimant reports an ability to shop, attend doctor's appointments, socialize with friends and family members, and travel by plane to attend social events in another state.

(R. 25-26) (citations omitted). The court finds the evidence relied upon is substantial evidence (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) and supports the inference that Plaintiff has mild limitations in these two broad mental functional areas.

Plaintiff's argument the ALJ overgeneralizes the medical evidence regarding Plaintiff's mental impairments does not explain specifically the erroneous overgeneralizations upon which the ALJ relies. He cites, without pinpoint citation the case of Scott v. Astrue, 647 F.3d 734 (7th Cir. 2011). In his citation, Plaintiff included facts from that case which are not present in this case (that the plaintiff had bipolar disorder, the ALJ found inconsistencies in the treating doctor's statements, despite improvement the plaintiff continued to have manic depressive episodes) and argues that here the ALJ erroneously relies "on instances where Plaintiff is doing better to dismiss Plaintiff's severe impairments." (Pl. Br. 18). He then argues, "The ALJ fails to resolve these inconsistencies, or to incorporate this evidence into his finding of disability or his RFC analysis." The court is at a loss to understand Plaintiff's argument. The court finds no overgeneralization or other error in the ALJ's consideration of his mental impairments or of Listing 11.14. Scott does not seem to the court to be related in any fashion to this case. Moreover, it may be distinguished in that Scott was decided pursuant to the treating physician rule in effect for claims filed before March 27, 2017, bipolar disorder is not an impairment in this case, and Plaintiff does not point to any inconsistencies the ALJ found in a treating doctor's statements. Further, Plaintiff does not point to specific inconsistencies the ALJ failed to resolve.

Finally, the court acknowledges that the evidence is equivocal and might lead to two fairly conflicting views. Lax, 489 F.3d at 1084. However, the ALJ's consideration of Listing 11.14 is supported by substantial record evidence and the record evidence does not compel a contrary finding.

**IV.     RFC Assessment**

Plaintiff presents his allegation of the error in the ALJ's decision and a portion of

the legal standard for assessing RFC:

> The ALJ erred by failing to provide a reasonable basis or a narrative
> discussion backed by substantial evidence supporting his conclusion that
> Plaintiff was not disabled and that he was capable of sedentary work.  The
> RFC assessment must include a narrative discussion describing how the
> evidence supports each of the ALJ's conclusions, with the ALJ citing
> specific medical facts and nonmedical evidence.  Lawton v. Barnhart, No.
> 04-1050, 121 Fed. Appx. 364, 374 (10th Cir. February 7, 2005).  An RFC
> assessment which fails to include such a narrative discussion will be
> deemed to be unsupported by substantial evidence.  Southard v. Barnhart,
> No. 02-7102, 72 Fed. Appx. 781, 784-85 (10th Cir. July 28, 2003); Tracy v.
> Astrue, 518 F. Supp. 2d 1291 (D. Kan. 2007).  A general discussion of the
> evidence by the ALJ will not suffice; the ALJ must relate the evidence to
> his RFC conclusions. Cruise v. U.S. Dept. of Health & Human Services, 49
> F.3d 614, 618 (10th Cir. 1995).  He must connect the dots between the
> evidence and his conclusions.  Munday v. Astrue, 535 F. Supp. 2d 1189,
> 1197 (D. Kan. 2007).

(Pl. Br. 19).

Plaintiff argues the ALJ's reasons for discounting his allegations of pain are not

supported by the record evidence, that his hunting and fishing do not require skills similar

to those required by his past relevant work as a customer service representative, and the

ALJ should have inquired about the extent, manner, and results of his fishing and

hunting.  (R. 20-21).  He argues the ALJ did not adequately discuss why Plaintiff's pain-

related limitations and restriction "cannot reasonably be accepted as consistent with the

medical and other evidence" and that "[t]he bare assertion that inconsistencies were

resolved, or evidence considered, on the limited evidence indicated by the ALJ should

not be accepted as reasonably consistent with Plaintiff's continued reports of symptoms of pain." Id. 22 (citing Lawton, 121 F. App'x. at 374).

Plaintiff claims the ALJ failed to apply the credibility analysis set forth in Kepler v. Chater, 68 F.3d 387 390 (10th Cir. 1995) but found "without evidence that Plaintiff could not be in pain because he is capable of slowly doing household chores, when reminded by his friend, and occasionally being able to hunt." (Pl. Br. 23) (citing R. 280, 1233). Plaintiff then purports to follow the Kepler factors, citing certain evidence from the record, and concludes, "Despite this [evidence], the ALJ found that Plaintiff had the ability to do occasional reaching in all directions with the right upper extremity. The ALJ should have taken into account Plaintiff's complaints of disabling pain and determined that he suffered from disabling pain." Id. 24-25 (citation to ALJ's decision omitted).

Again, Plaintiff argues,

Plaintiff does not request that this Court [sic] make an alternate credibility finding, [but] simply to find that the ALJ's conclusory decision is not based on substantial evidence. [The] ALJ has no evidence of functional limitations or a function-by-function analysis of Plaintiff's ability to perform workplace activities or activities of daily living. The ALJ's analysis here is based on limited inferences and the conclusions that the ALJ draws are not based on substantial evidence. … The ALJ's selective use of vague references in the record, inappropriate medical judgment, minimization of Plaintiff's subjective reports of pain, and disregard of medical evidence shows that the conclusions reached by the ALJ are unreasonable, and making a finding based on unreasonable conclusions from limited evidence constitutes reversible error sufficient for either remand of the case or direct award of benefits to Plaintiff.

Id. 25-26. He concludes his discussion,

This is not a question of whether Plaintiff has some capacity to work, or whether there's an inconsistency within Plaintiff's testimony which causes one to doubt Plaintiff's other testimony regarding his symptoms. This is a

question of whether he has the capacity for substantial gainful employment. Plaintiff's activities of daily living do not provide substantial evidence that plaintiff has that capacity to work given his physical impairments.

(Pl. Br. 25-26) (emphasis in Pl. Br.).

The Commissioner argues "the ALJ provided the narrative discussion required by SSR 96-8p." (Comm'r Br. 19). She argues Plaintiff fails to demonstrate a basis for remand in his argument of error in the ALJ consideration of Plaintiff's allegations of disabling pain. Id. 20. She argues the ALJ explained the bases for his findings and substantial evidence supports those bases despite Plaintiff's contrary arguments. Id. 19-27.

**A.   Standard for Assessing RFC**

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1545(a); see also, White, 287 F.3d at 906 n.2. It is an administrative assessment, based on all the evidence, of how a claimant's impairments and related symptoms affect his ability to perform work related activities. Id.; see also SSR 96-5p, 1996 WL 374183, at *5 (SSA July 2, 1996) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, 1996 WL 374184, *2 (SSA July 2, 1996). ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) ... may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The Commissioner has provided eleven examples of the types of evidence to be considered in making an RFC assessment, including: medical history,

medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations.  SSR 96-8p, 1996 WL 374184, *5.

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a).  Moreover, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. § 404.1527(e)(2), 404.1546.

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits."  1996 WL 374184, *1. The ruling includes narrative discussion requirements for the RFC assessment.  Id. at *6-7.  The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id., at *7.  The discussion must include an explanation how any

ambiguities and material inconsistencies in the evidence were considered and resolved.

Id.  The narrative discussion must include consideration of the credibility of the

plaintiff's allegations of symptoms and consideration of medical opinions regarding the

plaintiff's capabilities.  Id.  If the ALJ's RFC assessment conflicts with a medical source

opinion, the ALJ must explain why he did not adopt the opinion.  Id.

### B.  Standard To Evaluate a Claimant's Allegations of Symptoms

An ALJ's credibility determination is intertwined with the RFC assessment; Poppa

v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009); and evaluations of a claimant's

allegation of symptoms are generally treated as binding on review.  Talley v. Sullivan,

908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir.

1983).  Such "determinations are peculiarly the province of the finder of fact" and will

not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144;

accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's evaluations, the

court will usually defer to the ALJ on matters involving a claimant's allegations.  Glass v.

Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  However, such findings "should be closely

and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings."  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133

(10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

Moreover, the Tenth Circuit Court of Appeals has condemned the practice of

dismissing a plaintiff's allegations of symptomatology on the strength of a boilerplate

recitation of the law.  White, 287 F.3d at 909 (citing Kepler, 68 F.3d at 390-91 (where the

ALJ merely notes the law governing assessment of allegations of symptoms, discusses

the evidence in general terms, and finds in a conclusory fashion that the evidence does not support a plaintiff's allegations of disabling severity, remand is necessary to allow the ALJ to specifically link his findings to the evidence)).

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson, 987 F.2d at, 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler, 68 F.3d at 391 (quoting Thompson, 987 F.2d at 1489).[3]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

### C.      The ALJ's RFC Assessment and Credibility Findings

The ALJ assessed Plaintiff with the RFC

> to lift or carry 20 pounds occasionally and 10 pounds frequently.  He can stand or walk for 4 hours in an 8-hour workday.  He can sit for 6 hours in

---

[3] Poppa, Talley, Broadbent, Wilson. Hackett, Glass, Huston, White, Luna, Thompson, and Kepler, were all decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term, and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529 Allen_quinlan).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on March 16, 2022, when this case was decided.  Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.  Plaintiff uses the term credibility finding in reference to the ALJ's findings regarding Plaintiff's allegations of disabling symptoms and in this opinion the court uses the terms interchangeably.

an 8-hour workday.  He can push or pull in the limits for lifting and
carrying.  He can occasionally use ramps and stairs.  He cannot use ladders,
ropes, or scaffolds.  He can frequently balance, stoop, kneel, crouch and
crawl.  He can frequently finger.  He can do occasional reaching in all
directions with the right upper extremity.  He can work at moderate noise
levels.  He should avoid concentrated exposure to temperature extremes,
and hazards.  He should not work around vibration.

(R. 20) (finding no. 5, bold omitted).

The ALJ found Plaintiff's "impairments could reasonably be expected to cause the

alleged symptoms" but that his allegations of symptoms were not consistent with all the

record evidence.  Id. 21.  He discussed Plaintiff's allegations of symptoms and his

reasons for finding them inconsistent with all the evidence.  Id. 21-22.

As for the claimant's statements about the intensity, persistence, and
limiting effects of his symptoms, they are inconsistent because they are not
supported by the objective evidence, examination findings, and progress
notes of record.  The claimant has a long history of multiple
musculoskeletal impairments including degenerative disc disease of the
lumbar spine, degenerative joint disease of the bilateral knees, ulnar
neuropathy, bilateral carpal tunnel syndrome, and a right rotator cuff
impingement syndrome.  A January 2021 x-ray of the claimant's lumbar
spine revealed minor degenerative disc disease with marginal osteophytes
at L1-2 and L3-4.  (Ex. B12F/7-8.)  A September 2020 x-ray of the
claimant's left elbow revealed mild osteoarthritis and an October 2020
EMG revealed left ulnar neuropathy.  (Ex. B2F/21, 23-24.)  X-rays of the
claimant's left knee revealed mild degenerative changes and an MRI of the
claimant's right knee revealed a large tear in the right posterior horn of the
medial meniscus that was surgically repaired in October 2021.  (Ex.
B6F/185-86; B7F/4-8, 126; B12F/55-56.)  Lastly, the medical evidence
notes a history of bilateral carpal tunnel syndrome and a right rotator cuff
impingement syndrome. (Ex. B1F/35, 43, 54, 57, 68, 124, 129, 148, 328,
331-32; B2F/17-18, 24; B4F; B5F/14, 29.)

The claimant testified that he experiences back pain that worsens with
bending, sitting too long, or standing too long.  (Hearing Testimony.) The
claimant further testified that he has to change position often in order to
manage his pain.  (Hearing Testimony.)  The claimant also discussed that it
is difficult for him to drive because he has to keep his arms up on the

steering wheel, he cannot lift heavy pots or pans, and he drops a lot of items from his hands because of poor grip strength. (Hearing Testimony.) The claimant reported that he has constant pain in his shoulders, back, knees, left elbow, and bilateral hands. (Hearing Testimony.) The claimant stated that he has difficulty using a keyboard due to hand and wrist pain, and he estimated that he could walk fifty yards before resting, sit for ten to fifteen minutes at one time, and stand for a couple of minutes at one time. (Hearing Testimony.)

While the claimant testified to significant physical limitations as a result of his musculoskeletal impairments, the medical record is not fully supportive of his allegations. For example, during the period at issue the claimant did not engage in any significant treatment for his lumbar degenerative disc disease, left ulnar neuropathy, right rotator cuff impingement syndrome, or bilateral carpal tunnel syndrome. The claimant was provided a padded left elbow brace and oral medications to manage his pain, but no other treatment was initiated or recommended. (Ex. B1F/36-37; B2F/19-20; B5F/28-29; B9F/13-19.) With respect to his bilateral knees, the claimant underwent a corticosteroid injection for his left knee in June 2021 and surgery in October 2021 to repair a right meniscal tear. (Ex. B11F/21-22; B12F/55-56.) Although the claimant testified that beginning one year prior to his knee surgery and continuing to the present, he required the use of a cane for ambulation, the record indicates that the claimant used a cane very intermittently prior to his knee surgery and he discontinued using a cane in November 2021. (Ex. B1F/21-24, 35-38; B4F; B5F/18-20, 34-36; B6F/149-50, 176-79; B8F/38-46; B9F/10-13; B10F/41, 48-50; B11F/23-26; B12F/30.)

Likewise, physical examinations of the claimant revealed few positive findings. (Ex. B1F/35-38; B8F/20-23, 38-46; B9F/13-19; B11F/23-26.) During a physical consultative examination in February 2021 with Dr. Pramod Gaudel, the claimant's gait was noted to be antalgic without the use of an assistive device, his grip strength was slightly diminished at 4+/5, his Tinel's and Phalen's were positive, but he demonstrated adequate fine manipulation. (Ex. B4F.) Additionally, the claimant's muscle tone and strength were normal in all muscle groups, although he had difficulty standing on his heels and toes or tandem walking and he had some reduced range of motion in his cervical spine, bilateral hips, bilateral knees, lumbar spine, bilateral shoulders, and bilateral wrists. (Ex. B4F.)

Furthermore, the claimant's activities of daily living do not support that the claimant has disabling musculoskeletal impairments. While the claimant discussed in his Adult Function Report that he could no longer hunt or fish

because of his pain and physical limitations, the record indicates that the
claimant continues to hunt with a friend, and he reported enjoying fishing at
his new home with his girlfriend.  (Ex. B9E; B1F/22; B6F/136-38, 176-79;
B8F/50; B9F/22-26; B11F/17, 19-20.)  Moreover, the claimant reported an
ability to prepare meals, perform household chores, drive, shop, work on
his truck, and travel, and he moved himself into a new house and he helped
his girlfriend's sister move out of state.  (Ex. B5F/6-7; B6F/131-33, 136-38;
B7F/138.)

(R. 21-22).

In his RFC assessment, the ALJ once again discussed Plaintiff's mental

impairments:

Regarding the claimant's mental impairments, the undersigned finds that
they are nonsevere.  Specifically, the record reflects that the claimant
struggled with depression and anxiety following the death of his wife and
father.  (Ex. B1F/24-24; B5F/18-20, 34-36; B6F/131-33; B7F/138;
B11F/19-20.)  However, with therapy and medications the claimant was
able to find a girlfriend, purchase a new home, travel by airplane to Florida
multiple times throughout the record, and engage in leisure activities such
as hunting and fishing.  (Ex. B2F/10-12; B5F/8-10; B6F/117-18, 176-79;
B8F/50; B9F/38; B11F/17, 19-20.)  Moreover, mental status examinations
note that the claimant demonstrates fair to good hygiene, good eye contact,
normal speech, normal thought processes, and normal though content.  (Ex.
B6F/114-16; B9F/10-13, 22-26; B11F/5-12, 19-20.)  Furthermore, during a
physical consultative evaluation, the claimant did not appear anxious or
depressed, his memory was intact, and he had good insight and good
cognitive functioning.  (Ex. B4F.)  Likewise, the claimant demonstrated an
appropriate mood and affect with no signs of anxiety or depression during
several physical examinations.  (Ex. B8F/20-23, 38-46.)

Id. 23.

The ALJ also discussed the opinion evidence of record.  He noted that the VA had

found Plaintiff unemployable and therefore 100% disabled but that the SSA regulations

find such other agencies' and entities' "decisions are inherently neither valuable nor

persuasive to the evaluation under Social Security regulations and are not required to be

analyzed" because they apply their own rules which are not identical to SSA regulations.

Id. 24 (citing 20 C.F.R. §§ 404.1513, 404.1520c).  Nevertheless, he considered the VA

rating decision and found it "provides little support for their finding of disability."  Id.

He explained,

> The disability ratings were not accompanied by supporting medical
> explanations in any detail to explain the rating results.  The undersigned is
> unable to determine the evidence and reasons for the disability ratings.  The
> undersigned found the ratings to be conclusory and without support of
> medical records and testing.

(R. 24).

The ALJ noted that a persuasiveness evaluation was not required for Dr. Gaudel's

report of examination because he did not opine specific functional limitations.  Id. (citing

20 C.F.R. §§ 404.1513, 404.1520c).  He explained,

> Nevertheless, the undersigned has reviewed Dr. Gaudel's examination
> findings that note the claimant's normal muscle tone and strength, his
> slightly decreased grip strength but adequate fine manipulation; his
> inability to stand on his heels or toes or tandem walk; and his reduced range
> of motion in his cervical spine, bilateral hips, bilateral knees, lumbar spine,
> bilateral shoulders, and bilateral wrists, which have been adequately
> accounted for in the claimant's residual functional capacity assessment
> detailed above.

Id.

The ALJ found the medical opinion of the state agency medical consultant at the

initial review, Dr. Singh, persuasive to the extent it agreed with the ALJ's assessment but

rejected her opinion Plaintiff could perform light work because Plaintiff is obese and has

pain in his back and knees.  Id. 25.  He discounted the opinion of Dr. Hegde regarding

light work in the reconsideration review for the same reason.  Id.  He discounted Dr.

Hegde's opinions on pushing and pulling with the right upper extremity because Plaintiff

did not have "any significant treatment for his right upper extremity during the period at

issue," and found the "limitation to avoid even moderate exposure to extreme heat,

wetness, humidity, noise, and hazards is not supported by the record or by the claimant's

activities of daily living indicating that he is able to hunt, fish, mow his yard, and drive."

(R. 25).

The ALJ also evaluated the opinions of the state agency psychological consultants,

finding Dr. Leaf's opinion at the initial level persuasive because it is supported by and

consistent with the record evidence.  Id. 24.  He found Dr. Duclos's opinion at the

reconsideration level that Plaintiff is moderately limited in interacting with others is

unpersuasive.  Id. 25.  He explained:

> Dr. Duclos opined that a moderate limitation in the area of interacting with
> others was supported by the claimant's difficulties in his last job and
> evidence of decompensation under stress, as well as the nature of his
> mental impairments.  (Ex. B5A.)  In contrast, the undersigned notes that
> during the period at issue, the claimant began a relationship with a woman,
> and they are presently living together.  (Ex. B6F/131-33; Hearing
> Testimony.)  Moreover, the claimant reports an ability to shop, attend
> doctor's appointments, socialize with friends and family members, and
> travel by plane to attend social events in another state.  (Ex. B5E/1-7; B9E;
> B6F/117-18, 131-33, 136-38, 176-79; B11F/5-12, 19-20; Hearing
> Testimony.)

Id. 25-26.

The ALJ concluded his RFC discussion:

> In sum, the claimant testified to a range of activities consistent with the
> limitations adopted herein.  The claimant's symptoms and impairments
> [are] fully accounted for by a limitation to sedentary work with additional
> postural, manipulative, and environmental limitations.  Beyond this, the
> nature and scope of the claimant's treatment has remained relatively routine
> and conservative.  It does not reflect an intensity or frequency of symptom
> exacerbation that supports reducing the residual functional capacity any
> further.

Id. 26.

**D.** **Analysis**

Contrary to Plaintiff's assertion, the ALJ did provide a narrative discussion describing how the evidence supports his RFC assessment and citing medical and non-medical evidence. (R. 21-26). Moreover, he specifically related the evidence to his RFC conclusions. E.g., id. 22-23 ("In consideration of …"); 26 ("In sum, …").

The ALJ, in fact, applied the credibility analysis set forth in Kepler, 68 F. 3d, at 390. (R. 21). Although the SSA describes the procedure as a "two-step" process, it is clear it encompasses the analysis presented in Kepler. The ALJ stated the SSA's first step—which encompasses the first two steps of the Kepler analysis: "it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) [(1) whether Claimant established a pain-producing impairment by objective medical evidence] … that could reasonably be expected to produce the claimant's pain or other symptoms [(2) whether there is a 'loose nexus' between the proven impairment and the claimant's subjective allegations of pain]." (R. 21). The ALJ then stated the SSA's second step as another two-part analysis considering whether the claimant's allegations are substantiated by objective medical evidence, and if the "symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record." ((3) whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling). Id.

As quoted supra at 36-37, the ALJ provided reasons for discounting Plaintiff's allegations of disabling pain supported by extensive citation to the record evidence and explained the inconsistencies upon which he relied. (R. 22). Plaintiff's argument that

hunting and fishing do not require skills similar to his work as a customer service representative obfuscates the ALJ's rationale in relying on those activities.  The ALJ relied upon Plaintiff's performance of those and other activities such as working on his truck, moving himself into a new house, and helping his girlfriend's sister move out of state, to demonstrate that the record evidence showing such activities were performed is inconsistent with Plaintiff's claim his pain was so severe as to preclude even hunting and fishing, much less work.  The ALJ did take into account Plaintiff's complaints of disabling pain and discounted them because they are inconsistent with his lack of significant treatment, few positive findings on physical examination, and his activities of daily living.  (R. 22).  The ALJ properly considered Plaintiff's allegations of disabling symptoms and properly discounted them.  He properly considered the record evidence, assessed Plaintiff's limitations and RFC and cited such relevant evidence in the record as a reasonable mind might accept to reach such conclusions.  Moreover, the record does not contain such evidence as would <u>compel</u> a different conclusion.

      **IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

      Dated December 20, 2023, at Kansas City, Kansas.

                        s/ John W. Lungstrum
                        **John W. Lungstrum**
                        **United States District Judge**